UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEAN JACQUES,
    *Plaintiff*,

v.

DEPARTMENT OF CORRECTION, *et al.*,
    *Defendants*.

No. 3:18-cv-00308 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Jean Jacques is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against the Department of Correction and several correctional officials alleging that they acted with deliberate indifference to his serious medical needs in violation of his Eighth Amendment right against cruel and unusual punishment. After initial review, I conclude that plaintiff has not alleged any plausible claims for relief against any of the named defendants and will therefore dismiss the complaint.

### BACKGROUND

On July 11, 2015, plaintiff fell off of the top bunk in his cell at Corrigan-Radgowski Correctional Center. He hit his head on the floor and was rendered unable to speak as a result. The correctional officer on duty (not named as a defendant) called the medical unit, and plaintiff was brought there for treatment. Doc. #1 at 10 (¶ 10).

While plaintiff was in the medical unit, a lieutenant attempted to discuss the incident with plaintiff, but he was unable to speak. Subsequently, Nurses John and Jane Doe entered the medical unit to provide care for plaintiff. They started "pinching and rubbing" plaintiff's body, and Nurse John Doe repeatedly rubbed his ring on the plaintiff's chest area in an attempt to make

1

him speak. Plaintiff describes their behavior as "unprofessional and aggressive." Nurse Jane Doe repeatedly told Nurse John Due to be careful when rubbing plaintiff's chest area to avoid injuring him. The nurses eventually realized that plaintiff was unable to speak, and they notified a doctor of plaintiff's inability to speak and his high blood pressure level. *Ibid.* (¶¶ 11–13).

On July 13, 2015, plaintiff was scheduled to go to court. An unidentified correctional officer (not named as a defendant) entered plaintiff's cell in the medical in-patient unit, yelled at him, and sprayed a chemical agent in his eyes, ears, mouth, and all over his body. The officer then pressed plaintiff's head against the floor, causing plaintiff to once again hit his head on the floor. The officer pressed his knees into plaintiff's back and falsely stated that plaintiff was resisting. Plaintiff tried to open his eyes, but they were burning, and he was in excruciating pain. The officer refused to let plaintiff wash the chemical agent out of his eyes and off of his skin. *Id.* at 10-11 (¶¶ 14-15).[1]

Later that day, plaintiff was taken to court without being given the opportunity to wash the chemical agent off of his body. He was therefore unable to open his eyes or speak during the court proceedings. During the nearly three-hour return trip back to the prison, the transporting officers (not named as defendants) turned on the heat in the vehicle, which caused plaintiff's body and eyes to burn. Plaintiff did not receive any medical attention for his injuries upon returning to the facility, but was instead placed in a cell in the mental health unit without any clothing. *Id.* at 11 (¶¶ 16-19)

Later, plaintiff was placed in the segregation unit for one month where he was denied showers, toilet paper, writing paper, envelopes, pencils, and medication. As a result of being

---

[1] Plaintiff's complaint alternates between describing the behavior of a single "officer" or many "officers" during this incident. It is unclear whether plaintiff intends to allege that there was only one officer involved or if there were several officers involved in this incident.

denied essential hygiene products, plaintiff developed an infection in his mouth which caused him to lose two of his teeth. *Ibid.* (¶¶ 20-21).

After one month in segregation, plaintiff was transferred to another facility. There, he continued to suffer from constant headaches and vomiting. He communicated with the nurses and doctors at the facility and requested x-rays and a CAT scan, but his requests were denied. Plaintiff states that he was not treated for any of his medical issues.

Plaintiff has filed this lawsuit against the Connecticut Department of Correction, Commissioner Scott Semple (the Commissioner of the Department of Correction), Anthony Santiago (the warden of Corrigan-Radgowski), Mary Ellen Castro (alleged to be "in charge" of UConn's correctional managed health care system), Nurse John Doe, and Nurse Jane Doe. He has not named as defendants any of the correctional officers whom he alleges sprayed him with mace, transported him to court, or subjected him to segregation and denied him medical care while there.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to raise the strongest arguments they suggest. Ultimately, however, a complaint must allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See generally Nielsen v. Rabin*, 746 F.3d 58, 62-63 (2d Cir. 2014) (describing rules of pleading review that apply to *pro se* complaints).

*Sovereign immunity*

I will dismiss plaintiff's claim against the Connecticut Department of Correction because a state agency like the Department of Correction is not a person subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001).

As to the individual defendants, plaintiff has brought his claims against each of these defendants in both their personal and official capacities. Because each of the individual defendants is an employee of the State of Connecticut, plaintiff's official-capacity claims for money damages are plainly barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Although plaintiff seeks injunctive relief, he does not allege any ongoing unconstitutional actions by any defendants that would allow for these defendants to be sued in their official capacity. *See Dixon v. Santiago*, 2015 WL 9582729, at *3 (D. Conn. 2015).

*Supervisory defendants*

Plaintiff's claims against Commissioner Semple, Warden Santiago, and Mary Ellen Castro appear to be based exclusively on their supervisory positions. Aside from naming each of these supervisory officials as defendants, plaintiff does not allege any facts describing their involvement at all. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (noting that "liability for supervisory government officials cannot be premised on a theory of *respondeat superior* because § 1983 requires individual, personalized liability on the part of each government defendant"). Accordingly, I will dismiss the individual capacity claims against Commissioner Semple, Warden Santiago, and Mary Ellen Castro.

*Deliberate indifference*

Plaintiff principally claims a violation of his rights to be free from cruel and unusual punishment under the Eighth Amendment. The Supreme Court has held that a prison official's

"deliberate indifference" to a prisoner's serious medical needs amounts to a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The Second Circuit in turn has made clear that a prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an *objective* requirement—that the prisoner's medical need was sufficiently serious. *See Spavone v. New York State Dep't of Corr. Serv's.*, 719 F.3d 127, 138 (2d Cir. 2013). The prisoner must show that he suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a *subjective* requirement: that the defendant have acted recklessly—that is, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice. *See Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a prisoner must show that a specific defendant acted with the equivalent of a criminally reckless state of mind when denying treatment for the prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Assuming plaintiff's need for medical care following his fall was a serious medical need, plaintiff has not adequately alleged that either Nurse John Doe or Jane Doe acted deliberately indifferent to that need. Plaintiff alleges that the nurses rubbed his chest and body aggressively in attempt to prompt him to speak. But plaintiff has not plausibly alleged that these actions posed a substantial risk of serious harm to him or that the nurses were aware of any such risk. In fact, plaintiff alleges that the nurses notified a doctor of plaintiff's health issues, and plaintiff received medical treatment. Accordingly, I will dismiss plaintiff's claims against Nurses Jane and John Doe.

Plaintiff's complaint also includes allegations regarding use of force by a correctional officer, placement in segregation, and denial of medical care at another correctional facility. But none of these allegations appear to relate to any of the defendants listed in plaintiff's complaint. Moreover, although plaintiff requests generalized injunctive relief "to prevent further unconstitutional acts against the plaintiff," plaintiff has not plausibly alleged that he is presently experiencing any ongoing violations of his constitutional rights. Accordingly, I will dismiss the complaint without prejudice.

## CONCLUSION

Plaintiff's complaint is dismissed without prejudice for failure to state a claim upon which relief could be granted pursuant to 28 U.S.C. § 1915A(b)(1). If plaintiff can allege facts to support a claim against a named defendant of deliberate indifference to serious medical needs or a violation of any other constitutional right, then he may file an amended complaint by **June 25, 2018**. Notwithstanding the significant hardship and difficulties that plaintiff alleges that he has experienced, plaintiff should give very careful consideration to whether there was a clear violation of his constitutional rights for which any defendant against whom he might file suit would not have qualified immunity from his claim for money damages. The Clerk of Court shall close this case if plaintiff chooses not to timely file an amended complaint by June 25, 2018.

It is so ordered.

Dated at New Haven this 25th day of May 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge