UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEAN JACQUES,
    *Plaintiff*,

v.                                         No. 3:18-cv-00308 (JAM)

DEPARTMENT OF CORRECTION, *et al.*,
    *Defendants*.

## INITIAL REVIEW ORDER OF AMENDED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Jean Jacques is a prisoner in the custody of the Connecticut Department of Correction ("DOC"), and he is currently incarcerated at Cheshire Correctional Institution. On February 20, 2018, Jacques filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against the DOC and several correctional officials for alleged violations of Jacques's right to be free from cruel and unusual punishment under the Eighth Amendment. After my initial review, I concluded that Jacques failed to state a plausible claim for relief under 28 U.S.C. § 1915A against any of the defendants and dismissed the complaint subject to amendment. *See* Doc. #11 at 6; *Jacques v. Dep't of Correction*, 2018 WL 2390141 (D. Conn. 2018).

Jacques has now filed an amended complaint, naming as defendants the DOC, Warden Anthony Santiago, Captain Shabenas, Lieutenant Marston, Lieutenant Conger, and Officers Ayala, Martin, Evans, Sposa, Quesnal, Colby, Montanari, and Reynoso. Doc. #14 at 1 (amended complaint). All of the defendants are being sued in their individual and official capacities for monetary, declaratory, and injunctive relief. *Ibid.* After initial review, I conclude that Jacques has not alleged plausible claims for relief against any of the defendants in their official capacities, nor has Jacques alleged a plausible First Amendment claim for relief against Marston. I will

therefore dismiss those claims. However, I conclude that Jacques does allege plausible Eighth Amendment claims against all defendants in their individual capacities except for the Santiago and the DOC, and I will therefore allow those claims to proceed.

## BACKGROUND

The following facts are assumed to be true solely for purposes of my initial evaluation of the adequacy of the allegations in the amended complaint. On July 13, 2015, Jacques was incarcerated at Corrigan-Radgowski Correctional Center. *Id.* at 2, 4 (¶¶ 3, 18). He was suffering from a head injury and was lying on his bed in the medical unit. *Id.* at 4 (¶ 18). He was scheduled to be in court at 9:30 a.m., and was awoken by a loud banging on his cell door. *Ibid.* He stood up from his bed and approached the door where he encountered Lieutenant Marston. *Ibid.* Marston screamed that Jacques was refusing to go to court and told him to "get the hell away from the door." *Ibid.* Lieutenants Marston and Conger and Officers Martin, Ayala, Evans, Sposa, Colby, Quesnal, Montanari, and Reynoso then entered Jacques's cell. *Ibid.* Marston continued to yell at Jacques and sprayed what Jacques describes as a chemical agent or pepper spray all over Jacques's body, causing Jacques to fall to the floor and hit his head. *Ibid.* Jacques alleges that the officers then kicked and punched him. *Ibid.*

While Jacques was on the floor, Evans pressed Jacques's head against the floor and punched him in his right eye. *Id.* at 5 (¶ 19). Montanari kicked him in the head. *Id.* (¶ 20). Montanari and Reynoso then stomped on his bare feet with their heavy boots. *Id.* (¶ 21). Colby, Sposa, Martin, Montanari, Quesnal, and Reynoso put their knees on Jacques's back and told him to stop resisting, even though Jacques had not been resisting any of them. *Id.* (¶ 22). Jacques tried to open his eyes, but the pain from the chemical agent prevented him from doing so, and the officers refused to let him wash the agent out of his eyes. *Id.* (¶ 23). The officers then lifted

Jacques, placed him in a wheelchair, and escorted him out of the medical unit in preparation for court transport. *Id.* (¶ 24).

Montanari and Reynoso brought Jacques to court. *Id.* (¶ 25). Because of the chemical agent and injuries to his head, Jacques was unable to speak or open his eyes when Judge Strackbein, who was presiding, addressed him, nor was he able to communicate with his attorney or his Haitian interpreter. *Ibid.* Judge Strackbein noted for the court record that Jacques seemed "unresponsive." *Id.* at 6 (¶ 26). During the transport back from the courthouse to Corrigan, Montanari and Reynoso turned up the heat in the transport, causing his skin and eyes to burn. *See id.* (¶ 28). Jacques was still suffering from the injuries he suffered from the assault earlier that day. *Ibid.*

When he arrived back at Corrigan, Jacques was placed in segregation after a brief time in the mental health unit. *Id.* (¶ 29). While in segregation, Jacques was denied a shower and adequate hygiene products, including soap, shampoo, a toothbrush, toothpaste, and toilet paper. *Ibid.* He was also denied his antibiotic and blood pressure medications. *Ibid.* The denial of these products and services led Jacques to develop an infection in his mouth, which resulted in the loss of two of his teeth. *Id.* at 6–7 (¶¶ 29–30). At one point, Jacques attempted to communicate with Warden Santiago using hand gestures because he was still unable to speak. *Id.* at 7 (¶ 30). Santiago told him that if he did not talk, he was "not gonna waste his time" with him. *Ibid.*

Other Corrigan officials continued to deny Jacques necessary hygiene products. *Ibid.* Jacques also alleges that he repeatedly requested a CAT scan, but that officials denied that request as well. *Id.* (¶ 31). As a result of the assault on July 13 and the denial of adequate care thereafter, Jacques suffered severe physical injuries, bruises to his face and body, migraine headaches, dizziness, and emotional distress. *Id.* (¶ 32). Jacques names one or more defendants

in association with the assault in the medical unit, the transport to and from court, and his time in segregation, but does not name any defendants associated with his treatment in the mental health unit or with the denial of a CAT scan.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A(a), the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

*Sovereign immunity*

Jacques lists the DOC as a defendant in the caption of his amended complaint. Doc. #14 at 1. As I stated in my prior initial review order, a state agency such as the DOC is not a person subject to suit under 42 U.S.C. § 1983. *See* Doc. #11 at 4 (citing *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71 (1989) (state and state agencies not persons within meaning of § 1983) and *Torrence v. Pelkey*, 164 F. Supp. 2d 264, 271 (D. Conn. 2001)). I will therefore dismiss any claim against the DOC.

I will also dismiss Jacques's claims against the individual defendants in their official capacities. While Jacques sues the individual defendants in both their personal and official capacities, Doc. #14 at 1, the Eleventh Amendment prevents him from maintaining a suit for money damages against state employees in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Jacques also cannot sue defendants for declaratory or injunctive relief, because Jacques does not allege any facts that, if true, would constitute ongoing unconstitutional conduct. A declaratory judgment is unavailable when it "could say no more than that Connecticut had violated federal law in the past," *Ward v. Thomas*, 207 F.3d 114, 119–20 (2d Cir. 2000), while a request for injunctive relief from a state agency or official is not cognizable consistent with the Eleventh Amendment absent an allegation of an ongoing constitutional violation. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Indeed, all of Jacques's claims for injunctive and declaratory relief are moot, because he is no longer confined at Corrigan, Doc. #14 at 2 (¶ 3), where the alleged unconstitutional conduct occurred. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Because Jacques may not sue defendants in their official capacities for damages, and because he cannot state claims against defendants in their official capacities for declaratory or injunctive relief, I will dismiss all claims against defendants in their official capacities. I will now review

Jacques's constitutional claims against the named defendants in their individual capacities for money damages.

### *Eighth Amendment claim for excessive force*

Jacques first claims that Marston, Evans, Montanari, Reynoso, Colby, Sposa, Martin, and Quesnal violated his Eighth Amendment protection against cruel and unusual punishment by using excessive force against him on July 13, 2015.[1] Doc. #14 at 8–9 (¶¶ 34–39). A claim alleging the use of excessive force in violation of the Eighth Amendment claims requires a plaintiff to prove both subjective and objective components. The subjective component focuses on "the defendant's motive for his conduct"; the objective component focuses "on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). In excessive force cases, the "core judicial inquiry" is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (*per curiam*) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (internal quotation marks omitted)). The use of excessive force against a prisoner can constitute cruel and unusual punishment regardless of whether the inmate suffers serious injuries. *See Hudson*, 503 U.S. at 4; *accord Wilkins*, 559 U.S. at 34, 36.

---

[1] Jacques alleges some facts to suggest that he was in pretrial custody rather than prison when the events described in his amended complaint occurred. At the time of the events of the amended complaint, Jacques was at Corrigan-Radgowski Correctional Center, which houses both pretrial detainees and prisoners. *See Corrigan-Radgowski Correctional Center*, CONN. DEP'T CORR. (2018), https://portal.ct.gov/DOC/Facility/Corrigan-Radgowski-CC. He is now incarcerated at Cheshire Correctional Institution, which houses sentenced offenders. *See Cheshire Correctional Institution*, CONN. DEP'T CORR. (2018), https://portal.ct.gov/en/DOC/Facility/Cheshire-CI. In addition, the Connecticut Department of Correction's entry for Jacques's inmate number indicates that he was only sentenced in 2016, while all the events in the complaint took place in 2015. *See Inmate Information for #244760*, CONN. DEP'T CORR., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=244760 (last visited Sept. 11, 2018). If Jacques was, in fact, in pretrial custody, I construe his Eighth Amendment claims as requests for relief under the Fourteenth Amendment's Due Process Clause. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 ("the due process clause protects a pretrial detainee from the use of excessive force that amounts to punishment"); *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (same for medical conditions of confinement). "An unconvicted detainee's rights are at least as great as those of a convicted prisoner." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Consequently, to the extent that Jacques's Eighth Amendment claims may proceed, so too may they proceed if the Fourteenth Amendment ultimately applies.

Jacques alleges that Marston, Conger, Evans, Montanari, Reynoso, Sposa, Martin, and Quesnal all entered his cell, Marston sprayed him with pepper spray and caused him to fall and hit his head on the floor, and that the officers then started kicking and punching him. Doc. #14 at 4 (¶ 18). Afterwards, Jacques alleges, the officers refused to let him wash off the spray. *Id.* at 5 (¶ 24).

Jacques also alleges that individual correctional officers committed further acts of misconduct. Jacques alleges that Evans pressed his head on the floor and punched him in the right eye, causing him pain and swelling that lasted several days. *Id.* (¶ 19). Jacques alleges that Montanari, Reynoso, Colby, Sposa, Martin, and Quesnal all put their knees on his back, causing him severe pain. *Id.* (¶ 22). Jacques also alleges that Montanari and Reynoso stomped on and injured his feet, *id.* (¶ 21), and after he was in a wheelchair and unresponsive in court, turned up the heat on the transport from his court hearing back to Corrigan, causing his skin to burn en route. *Id.* at 6 (¶ 28). Jacques alleges that he was not violent, and that he did not refuse to follow instructions, did not break any rules, and did not act disruptively. *Id.* at 10 (¶ 42).

Jacques has sufficiently alleged facts against each of the excessive force defendants that indicate a malicious desire to cause harm rather than a good faith effort to maintain discipline. *Wilkins*, 559 U.S. at 37. Jacques alleges facts that, if true, show that each of the defendants either initiated or continued the assault on him without any need for force to restrain him, that defendants denied him the opportunity to wash off the pepper spray and prolonged his pain, and that Montanari and Reynoso continued to inflict pain on him even after he was already injured and restricted in his mobility. Jacques therefore states a plausible claim for the use of excessive force in violation of the Eighth Amendment against Marston, Conger, Evans, Montanari, Reynoso, Colby, Sposa, Martin, and Quesnal. *See also Figueroa v. Mazza*, 825 F.3d 89, 106 (2d

7

Cir. 2016) (liability for failure to intervene if officer observes the use of excessive force and has sufficient time to prevent it).

### *Supervisory liability excessive force claim against Shabenas*

Jacques appears to sue Shabenas on the grounds that he was Marston's supervisor, but failed to protect him from Marston's assault. *See id.* at 9–10 (¶ 41). He alleges that Shabenas knew about the assault because Marston told him. *Ibid.* He also alleges that Shabenas "threatened to beat [him]" and failed to intervene to prevent the assault. *Ibid.*

Liability for supervisory officials under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*, and instead requires the personal involvement of each individual held liable. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). The Second Circuit has held that "[t]he personal involvement of a supervisory defendant may be shown by evidence that . . . the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or…the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were occurring." *Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In addition, there must be proximate causation between a supervisor's actions and the harm a subordinate inflicted. *Id.* (citing *Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002)). It is not clear from the amended complaint when Marston told Shabenas about the assault, and therefore whether Shabenas had the opportunity to act on information that the assault was occurring and prevent it. At this stage, however, I will construe Jacques's allegations liberally, and permit the Eighth Amendment supervisory liability claim for excessive force to proceed against Shabenas.

### *Supervisory liability excessive force claims against Conger, Marston, and Santiago*

8

Jacques names Conger and Marston in connection with "illegal action, failing to correct that misconduct, and encouraging the continuation of the misconduct." Doc. # 14 at 9 (¶ 40). The same paragraph naming Conger and Marston suddenly changes focus to Santiago, leaving it unclear what exactly Jacques means to allege against Conger and Marston. Nonetheless, the language of "failing to correct" and "encouraging the continuation" of misconduct, *ibid.*, as well the fact that Conger and Marston were Lieutenants and therefore outranked the correctional officer defendants who also assaulted Jacques, *id.* at 2–4 (¶¶ 6–15), allows me to infer that Jacques is as attempting to make out a claim of supervisory liability against Conger and Marston.

Jacques alleges that Conger and Marston were present at the assault in his cell, and thus were aware that the correctional officer defendants were assaulting him. *Id.* at 4 (¶ 18). He further alleges that rather than stopping the correctional officers, Marston initiated and Conger joined in the assault. *Ibid.* Conger and Marston's alleged lack of supervision constitutes proximate cause for the injuries inflicted by officers that Conger and Marston could have stopped. As such, to the extent that Jacques alleges that Conger and Marston are liable as supervisors for injuries their subordinates inflicted, such a claim may proceed. Because Jacques has not alleged any knowledge by Marston and Conger of Montanari's and Reynoso's conduct during his trip to court and return, I will dismiss any claim of supervisory liability based on those events.

Jacques names Santiago in the same paragraph, and accuses Santiago of violating his Eighth Amendment rights. However, because Jacques does not allege that at any point Santiago was aware of the assault or treatment of him outside of his time in segregation, I cannot construe his amended complaint as stating a plausible claim for relief against Santiago on a theory of supervisory liability. I will therefore dismiss any claim against Santiago on such grounds.

*Deliberate indifference claim against Santiago and as to
mental health unit and segregation*

Although Warden Santiago was not involved in the assault or the transport incident, Jacques alleges that while he was in segregation, he tried to engage in non-verbal communication with Santiago regarding the conditions to which he was exposed there. *Id.* at 7 (¶ 30). Jacques alleges that Santiago nonetheless dismissed him, stating that "if Jacques can't talk," he was "not gonna waste his time" with him. *Ibid.* This single passing encounter does not sufficiently allege enough facts to support a plausible claim for deliberate indifference in violation of the Eighth Amendment by Warden Santiago. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Jacques otherwise alleges that he was placed in the mental health unit without clothing and then in segregation for 30 days where he was subject to very severe conditions. Doc. #14 at 6–7 (¶¶ 29–30). Although these conditions might rise to the level of an Eighth Amendment violation, the complaint fails altogether to allege facts identifying any individual defendant who was responsible for Jacques's assignment to the mental health unit and segregation and for the deprivation of his rights while he was there. Accordingly, the Court dismisses the complaint insofar as it alleges claims of deliberate indifference while Jacques was in the mental health unit or in segregation.

*First Amendment retaliation claim against Marston*

Jacques alleges that Marston "is" retaliating against him by threatening him with violence for seeking redress in some unspecified way through the prison grievance system. Doc. #14 at 10 (¶ 43). The basic requirements for a constitutional retaliation claim are that a plaintiff engaged in speech or other conduct protected under the Constitution and that the defendant in turn took adverse action against the plaintiff because of the constitutionally protected speech or activity. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). Courts treat prisoner retaliation claims

"with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Other than a bare allegation of threats of physical violence, Jacques has not alleged any facts that could support a claim of retaliation. Moreover, the bare allegation of retaliation in the present tense is in tension with Jacques's claim that he no longer housed at Corrigan. *See* Doc. #14 at 2, 10 (¶¶ 3, 43). Thus, Jacques does not state a plausible First Amendment retaliation claim for relief, and I will accordingly dismiss the claim.

## Conclusion

In accordance with the foregoing analysis, I enter the following orders:

(1) Jacques's Eighth Amendment excessive force claims may proceed against Marston, Conger, Ayala, Martin, Evans, Sposa, Quesnal, Colby, Montanari, and Reynoso in their individual capacities for damages. His Eighth Amendment excessive force claims on a theory of supervisory liability may proceed against Shabenas, Marston, and Conger in their individual capacities for damages. His remaining claims against these above-named defendants are dismissed, as well as his claim against Santiago and his claim against the Department of Correction.

(2) The Clerk shall verify the current work addresses of Marston, Conger, Ayala, Martin, Evans, Sposa, Quesnal, Colby, Montanari, Shabenas, and Reynoso with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint (Doc. #14) to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth**

**(35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants shall file their response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26–37, shall be completed by **April 28, 2019**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **May 28, 2019**.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 30th day of October, 2018.

                                        /s/ *Jeffrey Alker Meyer*
                                        Jeffrey Alker Meyer
                                        United States District Judge